UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Jeffery L. Howard, | ) | CASE NO.  3:13cv580 |
| | ) | |
| Plaintiff, | ) | Judge Jeffrey J. Helmick |
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| | ) | & ORDER |
| Management Training Corp., et al., | ) | |
| | ) | |
| Defendants. | ) | |

Before the Court is *pro se* plaintiff Jeffery L. Howard's civil action filed against defendants McKalee Weidner, Kasey Morris, Management & Training Corporation, Donna Strine, and Neil Turner.[1]  Plaintiff, a state prisoner incarcerated at North Central Correctional Complex ("NCCC"),[2] a privately operated prison in Marion, Ohio, alleges the defendants failed to act, retaliated against him and denied his right to both due process and free speech in violation of the First and Fourteenth Amendments pursuant to 42 U.S.C. § 1983.  He seeks injunctive relief as well as leave to increase the amount of damages he seeks, from $100.00 to $500.00, for each defendant named.

On May 31, 2013, I granted the defendants' Motion to Stay Discovery until I issued an Opinion addressing their pending Motion for Judgment on the Pleadings (Doc. No. 9.)  Howard objected to this decision and filed a Motion for Reconsideration/Alter or Amend Judgment (Doc.

---

[1] Defendants filed a Notice of Removal in this Court on March 18, 2013 from the Marion County Court of Common Pleas. *See Howard v. Management Training,* Case No. 2013CV0073 (Ct. Com. Pl. Marion Cnty.)(Finnegan, J.)  On March 25, 2013, I determined, *inter alia,* that the matter was properly removed. (Doc. No. 6.)
[2] Management & Training Corporation began operating the North Central Correctional Complex on January 1, 2012.

1

No. 31.)  In addition, he filed a second Motion for Leave to File an Amended Complaint (Doc. No. 26), to which the defendants' filed an Answer (Doc. 29.)

For the reasons set forth below, the Motion for Leave is granted, the Motion for Reconsideration is denied as moot, and the Motion for Judgment on the Pleadings is granted.

# I. AMENDED COMPLAINT

An amended complaint ordinarily supersedes the prior complaint.  *See In re Atlas Van Lines, Inc.*, 209 F.3d 1064, 1067 (8th Cir. 2000) (when plaintiff files amended complaint, new complaint supersedes all previous complaints and controls case from that point forward). Therefore, any facts not incorporated into the amended pleading are considered *functus officio*.[3]  *See* 6 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 1476 (2d ed. 1990); *Duda v. Board of Educ. of Franklin Park Pub. Sch. Dist. No. 84*, 133 F.3d 1054, 1057 (7th Cir. 1998); *Nisbet v. Van Tuyl*, 224 F.2d 66, 71 (7th Cir. 1955) ("An amended pleading ordinarily supersedes the prior pleading.  The prior pleading is in effect withdrawn as to all matters not restated in the amended pleading, and becomes *functus officio*.").  Therefore, if Howard's pleading is construed as an Amended Complaint, the original complaint would be void.

A review of Howard's motion clearly indicates he did not intend, as he suggests, to file an amendment pursuant to Federal Civil Rule 15(a)(2).  What he did file is simply a single page to insert as a substitution for page 7 of the original complaint.  As Howard states in the first paragraph of his "Proposed Amended Complaint," his "proposed amendment is to the relief requested."  Instead of requesting $100.00 from each defendant, he now seeks $500 from each defendant for punitive and nominal damages.  There is no proposed change to the body of his complaint.

Considering his *pro se* status and the net effect of filing an amended complaint, I will not construe this as a request for amendment.  Clearly, Howard is essentially seeking to supplement his

---

[3] The Latin term *functus officio* is described as "without further authority or legal competence because the duties and functions of the original commission have been fully accomplished." BLACK'S LAW DICTIONARY (9th ed. 2009).

original pleading pursuant to Federal Civil Rule 15(d).  Accordingly, the Motion for Leave to Amend is construed as a Request for Leave to Supplement, and that request is granted.

## II. BACKGROUND

Howard submitted two Informal Complaint Resolution (ICR) forms, each dated September 24, 2012, to NCCC Library Supervisor Donna Strine.  The first ICR addressed his attempt to use a typewriter to draft a kite in the NCCC library on September 14, 2012.  While he was typing, the librarian, McKalee Weidner, allegedly approached Howard to advise him not to use a typewriter to prepare a kite.  Without explaining his direct response to Weidner, Howard refutes her advice in his ICR as "not accurate."  Moreover, he complained that she displayed significant personality changes "by the hour" and behaved in that manner more frequently toward "certain legal aides."  As a remedy, Howard requested that NCCC advise Weidner to "stop making legal decision[s]."

In his second ICR, Howard complained that his attempt to have legal documents photocopied was thwarted by Weidner.  In closing, he stated: "I hope that I am not retaliated against by removal from my legal aide position." (Doc. No.1-2, at 32.)

In response to the ICRs, Strine advised Howard that it was neither necessary nor required to type kites, informal complaints, or even court documents.  Instead, she noted that as long as a document is written legibly it would be accepted.  She concluded her response with a reminder that typewriters are provided in the library as a courtesy.  She applied the same principle to prisoner requests for photocopying.

Howard filed a formal grievance against Weidner, Strine, and Commanding Officer Rushing in October 2012, adding a retaliation claim.  He alleged that after he filed his ICRs against Weidner, Rushing arrived at his cell to escort him to Strine's office on October 3, 2012. When he arrived at the office, Strine placed a copy of his completed job evaluation form on her desk for him to review. The evaluation recommended Howard's removal from his assignment as a legal aide in the library.

Strine allegedly commented, "we need workers who are not going to cause trouble, and just do their job." (Doc. No. 1-2, at 23.)  In his Grievance, Howard complained that Strine was imposing an "unconstitutional" condition of employment.  He also took exception to Rushing's presence during his evaluation meeting and questioned Strine's qualification to evaluate him when she never directly supervised him.  Finally, Howard challenged the library's assertion that photocopying was a privilege rather than a right and claimed they were limiting his access to legal materials.  Citing a 2003 NCCC policy, Howard maintained it was within his job description as a legal aide to type and perform clerical duties on behalf of other inmates.  Howard concluded that the only reason Strine and Weidner removed him from his position was in retaliation for filing an ICR against Weidner.

Inspector Morris denied Howard's grievance based on "insufficient evidence to support claim." (Doc. No. 1-2, at 27.)  Citing current Ohio Department of Rehabilitation policy number 59-LEG-01, Morris advised Howard that the institution was not required to provide photocopied material.  Moreover, the 2003 NCCC policy Howard cited in support of his claim was no longer in effect.  Morris noted that Howard was personally advised of the prison's policy by Weidner, therefore he could claim he had no warning regarding the use of typewriters to file kites.  Finally, Morris believed Howard knew he was going to be removed from his position before he filed the ICR against Weidner.  Noting that prior to filing the grievance, Howard already had an acrimonious relationship with the Weidner, Morris pointed out that even Howard referred to Weidner in disrespectful tones in the grievance.  He believed Howard's concluding statement that "he hoped to not be retaliated against by removal," simply suggests he was only attempting to prevent the impending loss of his job. *Id.*

On appeal to the Chief Inspector, Howard reiterated his original claims.  After reviewing the ICR, grievance and Inspector's remarks, the Chief Inspector affirmed the decision that no prison official retaliated against Howard for filing a grievance.  The Chief Inspector concurred with the

4

decision to limit copying to "legitimate legal material," but noted that a new copy machine was purchased for the prison and would be delivered once the card reader arrived.

Having fully exhausted his administrative remedies, Howard now raises three claims for relief.  First, he argues Weidner retaliated against him for exercising his First Amendment right to file a grievance.  When he allegedly tried to explain to Strine the difficulties he was having with Weidner during their October 3, 2012 meeting, Howard alleges Rushing simply cut him off with the conclusion: "[T]his is over with, it's time to go." (Doc. No. 1-2, at 11.)

Secondly, Howard asserts the defendants denied his Fourteenth Amendment right to due process.  He argues the defendants cannot impose a sanction without first providing fair notice of the policy for which he is being punished.

Lastly, Howard argues that Inspector Morris's failure to provide a remedy for his retaliation claim violates his right to be free from harassment and retaliation.  He claims his "right to not be removed from a work program assignment for punitive purposes" should have been protected by Warden Turner.  (Doc. No. 1-2, at 12.)

## III. STANDARD OF REVIEW

The defendants have filed a Motion for Judgment on the Pleadings arguing Howard has failed to allege facts sufficient to support his claims.  They maintain that even construing the complaint in the light most favorable to him, and accepting all factual allegations as true, Howard can prove no set of facts in support of the claims that would entitle him to relief. *Smith v. City of Salem*, 378 F.3d 566, 570 (6th Cir. 2004).

Federal Civil Rule 12(c) provides: "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  The standard for evaluating a motion for judgment on the pleadings is the same as that applicable to a motion to dismiss under Rule 12(b)(6) for failure to state a claim. *Ziegler v. IBP Hog Market, Inc.*, 249 F.3d 509, 511–12 (6th Cir.

5

2001).  The Sixth Circuit set forth the standard, as follows:

> The Supreme Court has recently clarified the law with respect to
> what a plaintiff must plead in order to survive a Rule 12(b)(6)
> motion. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167
> L.Ed.2d 929 (2007). The Court stated that "a plaintiff's obligation to
> provide the grounds of his entitlement to relief requires more than
> labels and conclusions, and a formulaic recitation of the elements of a
> cause of action will not do." *Id.* at 1964–65 (citations and quotation
> marks omitted). Additionally, the Court emphasized that even though
> a complaint need not contain "detailed" factual allegations, its
> "[f]actual allegations must be enough to raise a right to relief above
> the speculative level on the assumption that all the allegations in the
> complaint are true." *Id.* (internal citation and quotation marks
> omitted). In so holding, the Court disavowed the oft-quoted Rule
> 12(b)(6) standard of *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99,
> 2 L.Ed.2d 80 (1957) (recognizing "the accepted rule that a complaint
> should not be dismissed for failure to state a claim unless it appears
> beyond doubt that the plaintiff can prove no set of facts in support
> of his claim which would entitle him to relief"), characterizing that
> rule as one "best forgotten as an incomplete, negative gloss on an
> accepted pleading standard." *Twombly*, 550 U.S. at 563.

*Assn. of Cleveland Fire Fighters v. Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007).  When an allegation is

capable of more than one inference, I am obligated to construe it in the plaintiff's favor. *Columbia*

*Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995) (citing *Allard v. Weitzman*, 991 F.2d

1236, 1240 (6th Cir. 1993)).  Further, I cannot grant a Rule 12(b)(6) motion merely because I may

not believe the facts plaintiff alleges. *Id.* Although the standard of review is liberal, a plaintiff must

still do more than merely assert bare legal conclusions. *Id.* Ultimately, the complaint must contain

"either direct or inferential allegations respecting all the material elements to sustain a recovery

under some viable legal theory." *Scheid v. Fanny Farmer Candy Shops, Inc.,* 859 F.2d 434, 436 (6th Cir.

1988) (quotations and emphasis omitted).

## IV.  CIVIL RIGHTS CLAIMS

To prevail in a civil rights action under 42 U.S.C. § 1983, a plaintiff must plead and prove

that the defendants, acting under color of state law, deprived the plaintiff of a right secured by the

Constitution and laws of the United States.  *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on*

*other grounds, Daniels v. Williams*, 474 U.S. 327 (1986).  Section 1983 alone creates no substantive rights; rather it is the means through which a plaintiff may seek redress for deprivations of rights established in the Constitution or federal laws.  *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979).  The statute applies only if there is a deprivation of a constitutional right.  *See e.g., Paul v. Davis*, 424 U.S. 693, 699-701(1976); *Baker*, 443 U.S. at 146-47.  Thus, "[t]he first inquiry in any § 1983 suit ... is whether the plaintiff has been deprived of a right 'secured by the Constitution and laws' " of the United States.  *Baker*, 443 U.S. at 140.

**A. Retaliation**

Howard's retaliation claim is straight forward. He asserts the defendants removed him from his position as a library aide in retaliation for filing a grievance against the librarian.  A prisoner's allegation prison officials retaliated against him for engaging in protected conduct is grounded in the First Amendment. *Thaddeus–X v. Blatter*, 175 F.3d 378, 388 (6th Cir. 1999).  In this context, a retaliation claim has three elements: (1) the prisoner was engaged in protected conduct; (2) an adverse action was taken against the prisoner that would deter a prisoner of ordinary firmness from continuing to engage in that conduct; and (3) a causal connection exists between the first two elements— i.e. the prisoner's protected conduct motivated, at least in part, the adverse action. *See Id.* at 394; *see also Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010).

A prisoner has an "undisputed First Amendment right to file grievances against prison officials on his own behalf." *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000).  If the grievances are frivolous, however, this right is not protected. *Id; see e.g. Lewis v. Casey*, 518 U.S. 343, 353 (1996) ("Depriving someone of a frivolous claim ... deprives him of nothing at all, except perhaps the punishment of Federal Rule of Civil Procedure 11 sanctions.").  Thus Howard's pursuit of legal claims against NCCC officials was protected conduct only to the extent that his underlying claims had merit.

Howard's underlying grievances included claims that he was denied access to court because the librarian would not permit him to type his kite or photocopy a page from a book. Neither claim was found to have merit.  To argue a denial of access to the courts, a prisoner must "show an actual injury to a non-frivolous legal proceeding arising from the defendants' alleged conduct." *Davis v. Powell*, 91 Fed. Appx. 495, 496 (6th Cir. 2004) (unpublished opinion) (citing *Lewis v. Casey*, 518 U.S. 343, 351 (1996)).  Howard's grievance never raised a valid access to court claim, as he failed to establish he suffered any actionable injury when the librarian challenged his use of a typewriter to draft a kite or denied his request to photocopy a book.  Therefore his underlying grievance lacked merit.  As such, Howard was not engaged in "protected conduct" when he was removed from his position as library aide.  Thus, without engaging in protected conduct, which encompasses two critical elements of a retaliation claim, Howard has failed to state a claim of retaliation.

**B. Due Process**

The Due Process Clause of the Fourteenth Amendment provides that a person may not be deprived of "life, liberty, or property, without due process of law." U.S. Const. Amend. XIV. Prisoners have narrower liberty interests than other citizens as "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Sandin v. Conner*, 515 U.S. 472, 485 (1995).  The question of what process is due is reached only if the inmate establishes the deprivation of a constitutionally-protected liberty interest.  *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005).

Howard seems to suggest that the decision to remove him from his position as a legal aide was a "sanction" for using a typewriter to draft a kite.  He argues the prison cannot impose a sanction for violating a rule without providing advance notice that the rule is in place.

As a threshold matter, there are no facts alleged that support any suggestion Howard was "sanctioned" for using the typewriter.  A review of Howard's job evaluation does not reveal that the

8

decision to remove him was based on his use of the typewriter or request for photocopies. Instead, in her evaluation of Howard's job performance, Weidner marked his "*Attitude*" at a score of "1", the lowest ranking on the scale of "1- 10." His grievances are rife with disdainful remarks about Weidner, and her evaluation includes the fact that she "dread[s] him coming to the library because it is almost assured there will be a confrontation." (Doc. No. 1-2, at 30.)

Regardless of the fact that Howard may perceive the loss of his job as a "sanction" for a rule violation, he has failed to allege he was deprived of a liberty interest without due process. Federal courts have consistently found that prisoners do not have a constitutionally protected liberty interest in prison vocational programs based on the Fourteenth Amendment. *See, e.g., Moody v. Daggett*, 429 U.S. 78, 88 n. 9 (1976) (Due Process Clause not implicated by prisoner classification and eligibility for rehabilitative programs, even where inmate suffers "grievous loss"). Similarly, prisoners are not entitled to a particular prison job. *See e.g., Dellis v. Corrections Corp. of America*, 257 F.3d 508, 511 (6th Cir. 2001) (district court properly dismissed as frivolous the plaintiff's claim that he was fired from his prison job); *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989) (no constitutional right to prison employment); *Canterino v. Wilson*, 869 F.2d 948, 952–54 (6th Cir. 1989) (no constitutional right to rehabilitation); *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987) ("[N]o prisoner has a constitutional right to a particular job or to any job"); *see also Carter v. Tucker*, No. 03–5021, 2003 WL 21518730, at *2 (6th Cir. July 1, 2003). Because Howard has failed to state any basis upon which I could find he was deprived of a liberty or property interest in retaining his position as legal aide, he cannot assert the defendants' violated his right to procedural due process.

### C. Failure to Correct Constitutional Violations

Because Howard has failed to state any claim that his Constitutional rights were violated, he cannot assert Morris failed to protect his "right to be free from retaliation." At best, he is attempting to assert a claim based simply on the fact that Morris was in a position, through the

9

grievance process, to reinstate Howard to his position at the library.

Responding to a grievance or otherwise participating in the grievance procedure is insufficient to trigger liability under section 1983. *Shehee v. Luttrell*, 199 F.3d. 295, 300 (6th Cir. 1999). Moreover, the Sixth Circuit has made it abundantly clear that a supervisor cannot be held liable under section 1983 based upon a failure to act. *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999) (citing *Leach v. Shelby County Sheriff*, 891 F.2d 1241, 1246 (1989)). As a general rule, *respondeat superior* is not a proper basis for liability under section 1983. *See Leary v. Daeschner*, 349 F.3d 888, 903 (6th Cir. 2003); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.), *cert. denied*, 469 U.S. 845(1984). The liability of supervisors cannot be based solely on the right to control an employee, nor "simple awareness of employees' misconduct." *Leary*, 349 F.3d at 903; *Bellamy*, 729 F.2d at 421. Furthermore, "a supervisory official's failure to supervise, control or train the offending individual is not actionable unless the supervisor 'either encouraged the specific incident of misconduct or in some other way directly participated in it.' " *Shehee*, 199 F.3d at 300 (quoting *Hays v. Jefferson County*, 668 F.2d 869, 874 (6th Cir. 1982)). "At a minimum a plaintiff must show that the [supervisor] at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Id.* (quoting *Hays*, 668 F.2d at 874).

Howard has failed to allege any defendants engaged in unconstitutional conduct. Without first establishing a violation of his Constitutional rights, Howard cannot sustain any section 1983 allegation that a supervisor is otherwise liable for the actions of his employees.

## V. CONCLUSION

Based on the foregoing, Howard's Motion for Leave to [Supplement] Complaint is granted (Doc. No. 26), the Motion for Reconsideration/Alter or Amend Judgment (Doc. No. 31) is denied as moot, Defendants' Motion for Judgment on the Pleadings (Doc. No. 9) is granted and the Complaint is DISMISSED. I certify, pursuant to 28 U.S.C. § 1915(a) (3), that an appeal from this

decision could not be taken in good faith.[4]

**So Ordered.**

s/Jeffrey J. Helmick

*United States District Judge*

---

[4] 28 U.S.C. § 1915(a)(3) provides: "An appeal may not be taken *in forma pauperis* if the trial court certifies in writing that it is not taken in good faith."